# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:10-cv-00055-R

**JASON KEY**                                                                                        **PLAINTIFF**

**v.**

**CITY OF PRINCETON, KENTUCKY**                               **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Docket #6). Defendant has responded (Docket #7). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion to Dismiss is DENIED.

## BACKGROUND

This action arises out of Plaintiff Jason Key's ("Key") release from the Police Department of Princeton, Kentucky ("PPD"). Key, a member of the Kentucky National Guard, brings this action under Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4311. In addition, Key states that his dismissal constitutes a violation of Kentucky Statute KRS 15.520, commonly referred to as the "Policemen's Bill of Rights."

The relevant facts from Key's complaint are as follows. On February 19, 2008, Key, a member of the 233rd Military Police Company of the Kentucky National Guard, was ordered to active status and ultimately deployed to Iraq in Operation Iraqi Freedom. Prior to his deployment, Key was employed with the PPD, and had been so employed since April 24, 1995. When Key returned from his service overseas, he was reemployed at his old position with the PPD beginning on March 9, 2009. On March 9, 2010, Key's employment was terminated, allegedly for insubordination.

Prior to his dismissal, Key claims that authorities within the PPD placed him on administrative leave with pay, pending an investigation. Key says the department did not provide him with an explanation for the investigation nor the basis of the charges for which he was under scrutiny. Key states that he does not know if there was a formal complaint lodged against him by a private citizen upon which the investigation and his ultimate dismissal were predicated. Finally, Key claims that he was not afforded a public, pre-termination hearing.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

**DISCUSSION**

**I. Motion to Dismiss claim under USERRA.**

Enacted in 1994, USERRA prevents, among other things, discrimination by employers against employees who serve in a branch of the armed forces or the national guard. 38 U.S.C. § 4311(b). USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed service shall be entitled to . . . reemployment rights." *Id.* § 4312(a). Under USERRA, "A person who is reemployed by an employer under [USERRA] shall not be discharged from such employment, except for cause within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days." *Id.* § 4316(c)(1). As neither party denies that Key's service was more than 180 days, the claim turns on whether Key was terminated *"within one year after the date of such reemployment." Id* (Emphasis added). Key alleges that the dates of his reemployment and termination, between March 9, 2009, and March 9, 2010, fall within one year of one another and thus he falls under the protections of the statute. The PPD claims that this time period falls outside of one year and therefore Key's termination does not trigger USERRA.

When confronted with an issue of statutory construction, "the starting point is the language employed by Congress." *Chapman v. Higbee Co.*, 319 F.3d 825, 829 (6th Cir. 2003) (*quoting Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.1995). In reviewing section 4316(c)(1), this Court finds the statute unambiguous. The phrase "after the date of such reemployment" in the context of the statutory language indicates that Congress intended to not count the first day of reemployment when calculating the one-year requirement of the statute. As such, the Court finds that the statute sets forth that an individual who is reemployed by an employer has at least one calendar year of protection under USERRA after the date of

reemployment.[1]

While the Sixth Circuit appears to not have examined section 4316(c)(1) or any analogous statutory language, at least one other circuit has interpreted a similar statute. In determining whether an individual was untimely in filing for asylum, the Ninth Circuit examined 8 U.S.C. 1158(a)(2)(B). *Minasyan v. Mukasey*, 553 F.3d 1224, 1227-29 (9th Cir. 2009). Section 1158(a)(2)(B) states that an alien petitioning for asylum must show "by clear and convincing evidence that the application [for asylum] has been filed one year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B); *see Minasyan*, 553 F.3d at 1225. Although the alien in *Minasyan* had entered the United States on April 9, 2001, the Ninth Circuit determined that the first date of the one-year filing period was April 10, 2001. *Minasyan*, 553 F.3d at 1227. Using this logic, the court ultimately determined that the alien's asylum application was timely filed within the one-year limitations period on April 9, 2002. *Id.*

Although 8 U.S.C. 1158(a)(2)(B) concerns with the timeliness of filing applications while 38 U.S.C. 4316(c)(1) measures the length of employment, the Court finds the analysis in *Minasyan* persuasive. According to his Complaint, Key was reemployed on March 9, 2009, and his employment was terminated on March 9, 2010. The language of the section 4316(c)(1) indicates that the measuring date of Key's employment should begin on March 10, 2009. As such, the date of his termination (March 9, 2010) was the 365th day of Key's employment, within one year of the reemployment, and therefore in violation of protections provided in USERRA.

---

[1] Section 4316(c)(1) provides that an employer may terminate an employee for cause who falls under the protections of USERRA within the one year period. As this decision takes place in the context of Rule 12(b)(6), this Court does not address whether the PPD had proper cause to dismiss Key. *See* 38 U.S.C. § 4316(c)(1).

In their motion, the PPD analogizes the relevant language in section 4316(c)(1) to rules governing statutes of limitations. As such, the PPD states that it is Rule 6(a) that governs the procedure by which Key's dates of reemployment should be measured. *See* Fed. R. Civ. P. 6(a). While Rule 6 does indeed govern computing time in certain circumstances, it is only to be used with federal statutes where that statute "does not specify a method of computing time." *Id.* Yet, the language of section 4316(c)(1) implicitly provides a method by which to compute time - counting the days following the date of reemployment. Consequently, reliance on Rule 6(a) is inappropriate.

Even using Rule 6(a) as the PPD espouses, this Court finds that the actions of the PPD violated the plain language of the statute. Utilizing dates set forth in previous case law, the Sixth Circuit previously described how to determine if the statute of limitations has tolled pursuant to Rule 6(a):

> If one considers October 19, 1994 to be day "0" [the day of the triggering event and so not counted] . . . , October 20 to be day "1," and so forth, the 365th day is October 19, 1995. If we view the count as beginning at midnight the morning of October 20 [the day after the triggering event] and count forward 365 days, the period ends at midnight on the morning of the following October 20th-requiring [the plaintiff] to file by or at 11:59 p.m. on October 19.

*Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997). Applying this method to the facts alleged in the complaint, Key was reemployed on March 9, 2009, and terminated on March 9, 2010. If the reemployment date (March 9, 2009) is the "triggering event" and one begins counting on March 10, 2009, then according to the above stated analysis, the date of reemployment and the date of termination fall *within* one year of one another.[2]

---

[2] With March 9, 2009, as the date of reemployment and the triggering event, then it is not counted. March 10, 2009, is "day 1," and every subsequent day is counted. This would end with March 9, 2010, which would be the 365th day, and consequently within one year of Key's reemployment.

**II. Motion to Dismiss claim under KRS § 15.520.**

Key claims that the PPD violated various statutory rights afforded law enforcement officers by Kentucky statute KRS 15.520 and Key is therefore entitled monetary damages and reinstatement in his old position. Otherwise known as the "Policemen's Bill of Rights," KRS 15.520 was enacted by Kentucky's legislature to "'establish a minimum system of professional conduct of the police officers of local units of government of this Commonwealth' by creating standards of conduct 'to deal fairly and set administrative due process rights for police officers . . . and at the same time providing a means of redress by the citizens of the Commonwealth for wrongs allegedly done to them by police officers[.]'" *McCloud v. Whitt*, 639 S.W.2d 375, 377 (Ky. Ct. App. 1982) (citing KRS § 15.520); *see Shelton v. Brown*, 71 F.Supp.2d 708, 711 (W.D.Ky. 1998). Specifically, Key states that pursuant to KRS 15.520, (1) if his termination was predicated upon a complaint about his conduct, then the department should have sought an affidavit from the complainant (2) he should have been afforded formal, written charges of the rule or regulation he allegedly violated and (3) he was entitled to a public, pre-termination due process hearing. DN 1 at 5-6.

The PPD states that Key's claims under KRS 15.520 should be dismissed, as the statute does not provide due process rights for law enforcement officers where no complaint about the police officer's conduct is filed with the police department.[3] DN 6-2 at 4. While the Kentucky Court of Appeals has twice found such a requirement a prerequisite for invoking the protections of KRS 15.520,[4] this Court need not determine whether the absence of a complaint bars Key's

---

[3] While KRS 15.520 applies only to police officers of local units of government who are participating in the Kentucky Law Enforcement Foundation Program, neither party denies that Princeton, Kentucky is participating municipality.

[4] *See Ratliff v. Campbell County*, No. 09-000310, 2010 WL 1815391, at *5 (Ky. App. Ct. May 7, 2010) ("The statutory language [of 15.520] applies to police officers who are subject to

claim under the statute.

This Court believes that with regards to his claims under KRS 15.520 and looking toward the motion to dismiss standard under Rule 12(b)(6), Key has included "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If a complaint levied against Key did indeed result in his dismissal, KRS 15.520 may entitle Key to some redress if the PPD did not follow the procedures set forth in the statute. The Sixth Circuit has consistently held that "[t]o survive a motion to dismiss under [Rule] 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2000) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988) (internal quotations and citation omitted)). While Key's pleading falls short of specifically asserting that a complaint was filed with the PPD regarding his performance as a police officer, the pleading contains the required inferential allegations to survive this motion to dismiss.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is DENIED.

---

citizen complaints as opposed to an internal investigation."); *Marco v. Univ. of Ky.*, No. 05-001755, 2006 WL 2520182, at *1 (Ky. App. Ct. Sept. 1, 2006) ("KRS 15.520 applies to investigations resulting from a 'complaint' against a police officer.").